## J. N. McFALL ET AL. v. McK. & Y. ICE CO. ET AL.

ERROR TO THE COURT OF COMMON PLEAS NO. 2 OF ALLEGHENY COUNTY.

Argued October 26, 1888—Decided January 7, 1889.

(*a*) Prior to recording their certificate of organization, the subscribers to the capital stock of an incorporated company accepted the bid of Inskeep, one of their number, to erect a building for corporate purposes for $10,000, payable in the capital stock.

(*b*) As arranged when said contract was made, Inskeep the next day sub-let the contract for $6,700 cash to McMasters, who erected the building, the subscribers each contributing thereto in proportion to his holding of stock.

(*c*) The stock which was to pass to Inskeep was never issued nor intended to be issued to him, but was divided among the subscribers as they had advanced the money for McMasters.

1. In such case, and as affecting one who furnished materials for the building, the stockholders, owners of the real estate, were the principals in the contract with McMasters, and Inskeep their instrument or agent.

2. McMasters was the contractor with the stockholders for the erection of the building, with power to bind the building and curtilage to the material man, whether Inskeep disclosed his principals at the time of the contract or not.

3. Where the facts upon which a point is based are not in controversy, it is for the court to declare their legal effect by explicit instructions, and it is error to submit the determination of the legal question thus arising to the jury.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK, WILLIAMS and HAND, JJ.

No. 157 October Term 1888, Sup. Ct.; court below, No. 315 April Term 1887, C. P. No. 2.

To the first Monday of April, 1887, a scire facias issued

upon a mechanics' lien, No. 17 April Term 1887, filed by J. N. McFall, et al., partners as McFall, Hetzell & Co., against the Keesport & Youghiogheny Ice Co., B. B. Coursin, A. Inskeep, E. C. Converse, R. G. Wood and J. F. Davitt, owners and reputed owners, and W. J. McMasters, contractor. Issue.

At the trial on January 11, 1888, evidence was introduced of the facts following:

On March 31, 1886, A. M. Powers et al. conveyed the parcel of land in McKeesport claimed to be bound by the mechanics' lien, to B. B. Coursin, E. C. Converse, A. Inskeep and R. G. Wood, the consideration being $3,300.

On May 20, 1886, Coursin, Converse, Inskeep and Wood, with J. F. Davitt, entered into articles of incorporation under the title of the McKeesport & Youghiogheny Ice Co., the capital stock being $15,000, divided into 300 shares of $50 each. The corporators each subscribed for 75 shares, except Wood, who took 38, and Davitt, who took the other 37. $1,500 of the capital was certified to have been paid in in cash. Upon the said articles, letters patent were issued on June 9, 1886, which were placed on record in Allegheny county on August 21, 1886.

On August 17, 1886, as appeared from the corporation minutes, Inskeep reported plans and specifications made by W. J. McMasters for a building 130 by 120 feet; and at the same meeting Inskeep's own bid to erect the ice-house, according to said plans and specifications for $10,000, payable in stock of the company, was accepted. The next day, Inskeep sub-let the contract to W. J. McMasters for $6,700, payable as the work progressed.

On August 19, 1886, the first order for material was given by McMasters. Ground was broken for the erection of the building a few days thereafter. The first delivery of material by the plaintiffs was on August 25th, and the last on October 2, 1886. The title to the land was conveyed to the corporation on October 23, 1886, for the consideration of $5,000.

Inskeep testified that he had 119 shares, amounting to $5,950 stock, and he got something like $3,000 in money; the most of it he paid in money and the money came back to him in order to have the books straight.

Davitt testified that the difference between $6,700 and

$10,000 was divided between the five original subscribers including himself, and that it was understood all along that that division was to be made.

It was thus shown, as claimed by the plaintiffs from the evidence, that no stock was ever issued to Inskeep under his bid to the company, although the stock was increased to $20,000; that the difference between $6,700, the contract price with McMasters for the erection of the building, and $10,000, the contract price with Inskeep, was divided between the five stockholders; that the stockholders in this way raised and paid, through Inskeep, the contract price with McMasters, and credited themselves on the books of the company as having paid thereby $10,000 of the stock subscribed by them.

The court, MAGEE, J., after explaining generally, the provisions of the mechanics' lien law, act of June 16, 1836, P. L. 696, and its supplements, charged the jury:

From this statement of the provisions of the law it will be observed that the lien filed must set forth the names of the owners or reputed owners and the name of the contractor when the contracts are made with him; that is to say, a lien may be filed when the contract is made with the owner or reputed owner, or a contractor who has his contract with the owner or reputed owner. The law does not authorize a lien where the contract is made with a sub-contractor and a sub-contractor is any one who deals with the contractor; so that if you find as a fact that the contract in this case was not made by the plaintiffs with the owners or reputed owners, or with the contractor, then there can be no recovery here, for if the contract was not made by the plaintiffs with the owner or reputed owner or the contractor, then the contract must of necessity, if made at all, have been made with a sub-contractor, and I have said to you that the law gives no right to a lien for contracts made with sub-contractors. The law requires that the material be furnished upon the credit of the building and its kind and time of delivery given. I have mentioned these requirements of the law because, as I understand the defence, it relates to these two subject matters.

The plaintiffs have furnished no direct and positive evidence that W. J. McMasters, whom they have named as the contrac-

tor, had his contract immediately with the corporation. They have offered evidence, however, to show that Mr. McMasters erected the building and furnished all materials and did all the work, and had such connection, as they contend, with the erection, as to justify the jury in drawing the conclusion that he was the contractor for the building and not a sub-contractor.

In answer to the plaintiffs' claim the defendants show that A. Inskeep made a bid for the erection and construction of the building for the price or sum of ten thousand dollars payable in stock of the ice company, and that by resolution of the board the contract was awarded to said Inskeep; that said Inskeep made and entered into a contract with W. J. McMasters to erect and construct the building contracted for by him with the company, for the sum of sixty-seven hundred dollars. The contract between Inskeep and the company was made on one day and that made between Inskeep and McMasters on the following day. In answer to this defence the plaintiffs say that the contract made between Inskeep and the company was not a bona fide contract, but that it was merely a measure adopted and a concerted plan of the stockholders, five in number, and of whom Inskeep was one of the principals, to secure a nominal contractor without responsibility in the matter, with no interests or rights in the contract price, and with the understanding of stockholders by pre-arrangement that the contract thus made was by Inskeep to be immediately made with McMasters for the sum of sixty-seven hundred dollars, and that the difference in the contract price was to be distributed among the stockholders according to their respective amounts of stock held in the corporation.

I do not hold it to be the law that an owner cannot make a contract for the very purpose of avoiding liability to mechanics' liens in the erection of a building, but in my judgment it must be, to operate as such, a bona fide contract and not a mere sham or pretence. For in that case the contract, where it is done in this way that I have indicated, may be regarded, on proof that such was its character, as a contract made with an agent whose principal at the time was unknown, but whose contract it in fact was. I therefore say to you as matter of law that if you find from all the evidence in the case that the contract of Mr. Inskeep with the company was a valid and operative contract

and that it was not done so that he might, as the agent and instrument of the company, make the contract with McMasters, and that he did so make it then, in the interest and for the benefit of the company, then your verdict ought to be for the defendant.

But upon the contrary, if you find as a matter of fact that the contract of Inskeep with McMasters was in fact and in truth the contract of the company, and that it was so understood by the corporation and Inskeep, and you further find that the material claimed was furnished on the credit of the building, then your verdict ought to be for the value of the materials furnished, with interest.

\* \* \* \* \* \* \* \*

The plaintiffs request the court to charge the jury [inter alia]:

2. That if they find that Inskeep, Coursin, Converse, Wood and Davitt were the subscribers to the capital of a proposed corporation, which intended to carry on the ice business on land, the title to which was in the first named four of them; that their articles of association, though dated May 20, 1886, and approved by the governor June 9, 1886, were not recorded in Allegheny county, where they intended to carry on business, until August 21, 1886; that on August 17, 1886, said five named persons met and agreed that they would accept a proposition from Inskeep for the erection of their ice house for the sum of $10,000, payable in stock of the intended corporation, and that said Inskeep should then make a contract with some outside person to build said ice house for a less sum, and that the difference between the price at which Inskeep contracted and the $10,000 stock should be divided pro rata between said five persons, and that they among them should pay, pro rata, his actual outlay as a payment on their stock subscriptions; then the contract of said Inskeep with W. J. McMasters is the contract of said Inskeep, Coursin, Converse, Wood and Davitt, and bound the property for all materials delivered to said Mc-Masters for and on account of the building described therein.

Answer: Refused. I cannot say to you that the allegations of this point of necessity bind the company property, but I leave to you to say, under the point if found to be true, whether

it satisfies you that the contract of Inskeep with McMasters was the contract of the company.[2]

Defendants' counsel ask the court to charge [inter alia]:

1. Under the evidence in this case the verdict should be for the defendants.

Answer: Refused.

2. There is no evidence that McMasters, with whom plaintiffs' contract was made, was anything but a sub-contractor. As sub-contractor he had no power to bind the building, and therefore the verdict should be for the defendants.

Answer: Refused.

3. The evidence as to the consideration under the contract between the ice company and Mr. Inskeep does not show any fraud of which the plaintiffs can complain, and should be disregarded by the jury.

Answer: Refused; but I say to you, as the law, that fraud cannot be presumed, but must be proven.

4. If the jury should think that under the evidence the whole $10,000 was not to be paid to Mr. Inskeep, but that a portion thereof was divided in stock between the stockholders, this would not make the defendants liable in this case or make Mr. McMasters a contractor having power to bind the building.

Answer: Refused; because I am of the opinion that the suggestions of the point are to enter into your consideration in ascertaining the status of McMasters to the company, and his power to bind the building.

6. It was the plain and obvious duty of the plaintiffs to know the relation which McMasters bore to the owners of the building; failing this, they furnished materials to him at their peril.

Answer: Affirmed.

The jury returned a verdict in favor of the defendants. A rule for a new trial having been discharged, the plaintiffs took this writ, assigning as error, inter alia:

2. The answer to the plaintiffs' point.[2]

*Mr. John S. Ferguson* (with him *Mr. E. G. Hartje*), for the plaintiffs in error:

1. Section 3, act of April 20, 1874, P. L. 75, provides that the certificate of organization, after approval by the governor,

shall be recorded in the office for the recording of deeds in and for the county where the chief operations are carried on, and "from thenceforth" the subscribers thereto and their associates and successors shall be a corporation, etc. Until August 21, 1886, then, Inskeep, Coursin, Converse, Wood and Davitt were in the position of individuals proposing to form a corporation, as to which purpose there was no notice to any one. In making the contract of August 18th, therefore, under the arrangement disclosed in the evidence, Inskeep acted for himself and as agent for his associates, and McMasters was substantially a direct contractor with the owners of the property and as such having authority to bind the building.

2. There was no doubt about the facts suggested in our point. The court was asked to instruct the jury, that if they found the facts referred to in the point to be true, the conclusion of the law was in our favor. There was a refusal, and the jury were practically instructed, that even though they found the facts to be as stated, they might return a verdict for or against us as they might see fit. Herein lies the error of the case.

*Mr. W. B. Rodgers*, for the defendants in error:

1. When the projectors of a company enter into contracts in behalf of a body, not existing at the time but to be called into existence afterwards, then, if the body for whom the projectors assumed to act does come into existence, it cannot take the benefit of the contract without performing that part of it which the projectors undertook that it should perform: Bell's Gap R. Co. v. Christy, 79 Pa. 59; Whitney v. Wyman, 101 U. S. 392. Moreover, the rights of mechanics' lien creditors begin when the building is begun: Henning v. Fry, 23 P. L. J. 125; and here the first delivery of the material was after the recording of the certificate of organization.

2. The question whether the contract with Inskeep was a sham and pretense, was left to the jury in plain terms and they were told that if the contract was not a bona fide contract they should find for the plaintiff. And there was no testimony supporting the theory of the plaintiffs' point that at the time of making the Inskeep contract the parties agreed that the difference between Inskeep's bid and that of McMasters should be

divided among them. Nor is there evidence that there was an agreement that the parties should pay Inskeep their pro rata of his outlay. Even if there were, its effect would only be to. make them partners with Inskeep as a contractor under the corporation. It is immaterial what Inskeep did, or agreed to do with his money, or what arrangements he made with others, so long as no rights of the plaintiffs are affected.

OPINION, MR. JUSTICE WILLIAMS:

The mechanics' lien, on which the scire facias in this case issued, was originally entered against the McKeesport & Youghiogheny Ice Co., a corporation, B. B. Coursin, A. Inskeep, E. C. Converse, R. G. Wood, J. F. Davitt, owners or reputed owners, and W. J. McMasters, contractor. The claim was for material furnished for the erection of an ice house on the order of McMasters. The defendants denied that McMasters was a contractor with the owners, and alleged that he was a sub-contractor under Inskeep, to whom the erection of the building had been let by them. The plaintiffs replied that the pretended contract with Inskeep was not made bona fide, but as a device by means of which the persons named as owners sought to charge the corporation ten thousand dollars for what cost them six thousand seven hundred under their contract with him; that Inskeep on behalf of himself and his associates contracted with him to build the ice house, and that each of them paid his proportion of the contract price and took credit for his share of the difference between that price and the sum of ten thousand dollars.

It is thus apparent that the question on which the plaintiffs' right to a lien depended, was whether McMaster's contract was in fact with Inskeep only or with all the owners of the ice house. The attention of the court was drawn to this question by the plaintiffs' second point, which asked an instruction to the jury upon the legal effect of the facts grouped therein. These were as follows:

1. That the persons named as owners were the subscribers to the capital stock of the proposed corporation.

2. That the object of the corporation was to carry on the ice business on land owned by them at the time the corporation was formed.

3. That the articles of incorporation were not recorded until August 21, 1886.

4. That on August 17, 1886, these persons agreed to accept a proposition from Inskeep to build the ice house for ten thousand dollars in the stock of the corporation, and that he should find some builder who would take the contract for a less sum payable in cash.

5. That it was also agreed that the cost of the building should be paid by them in proportion to the stock subscribed by each, and the profit made should be divided between them in the same proportion.

Upon these facts, which sufficiently appeared in the evidence, the court was asked to say that the contract made by Inskeep with McMasters, the builder, was not made on his own behalf alone, but on behalf of all who joined in the device, who afterwards paid the money to McMasters, and divided the ten thousand dollars in stock among themselves. The court refused this instruction but submitted the question raised by the point to the jury, saying: "I leave to you to say, under the point, if found to be true, whether it satisfies you that the contract of Inskeep with McMasters was the contract of the company." But not one of the facts on which the prayer for instructions rested, was in controversy. It was only their legal effect that the court was asked to declare. To submit that to the jury was simply to leave to them, without instruction, the determination of a legal question with which they were not familiar and upon which they had a right to expect an explicit instruction from the court.

The evidence disclosed that the contract set up as a defence was not made by Inskeep on his own behalf but on behalf of all the subscribers to the stock of the ice company; it showed that the money paid to McMasters was contributed in accordance with the original agreement, by each in proportion to the stock subscribed for by him ; and that the stock which was the formal consideration of the letting to Inskeep was never issued to him nor intended to be so issued, but was divided among the subscribers who received ten thousand dollars in stock for the six thousand seven hundred dollars paid by them. It was clear that all this was arranged for before the contract with McMasters was made, and that in carrying out the plan Ins-

keep was the representative of his associates as well as himself. The stockholders were the principals in the contract with McMasters, and Inskeep was the instrument or agent. Whether he disclosed his principals at the time of the contract or not, is immaterial; and it would be trifling with justice to treat this transparent device as a letting bona fide of the construction of the ice house to Inskeep, when neither he nor they so treated it at any time.

What was intended and accomplished by the arrangement was the payment of ten thousand dollars of stock subscriptions with little more than half that amount of money. The legal effect of the facts brought together in the point was to turn Inskeep into the instrument by and through whom this purpose was effected by the subscribers to the stock, and make his contract with McMasters the contract of all whom he represented. The question was whether the real parties to the contract were bound by it, or whether the thrifty scheme by which they had balanced their stock account, should now serve the further purpose of shielding them from responsibility for the materials used in the construction of their ice house. The plaintiffs were entitled to an affirmance of the point and an explicit instruction that upon the facts assumed in it the contract made with McMasters was that of all the owners.

Judgment reversed, and venire facias de novo awarded.

Argued October 26, 1888—Decided January 7, 1889.